# In the United States District Court for the Southern District of Georgia Brunswick Division

```
JEAN ANGLIN and GENE ANGLIN,

     Plaintiffs,

     v.                                      CV 2:22-058

CITY FACILITIES MANAGEMENT (FL)
LLC; and WINN DIXIE STORES,
INC. d/b/a Winn Dixie Store
Number 19,

     Defendants.
```

### ORDER

Before the Court are motions for summary judgment filed by Defendants Winn-Dixie Stores, Inc. ("Winn Dixie") and City Facilities Management (FL) LLC ("CFM"). Dkt. Nos. 37, 39. The motions have been fully briefed and are ripe for review. Dkt. Nos. 37, 39, 42, 43, 45. For the reasons stated below, Defendants' motions are **GRANTED**.

### BACKGROUND

This case arises from injuries caused by automatic sliding doors at a Winn Dixie store. On June 24, 2020, Plaintiff Jean Anglin fell at the Winn Dixie located in St. Simons Island, Georgia, when the store's automatic sliding doors (or "Doors") closed on her and struck her. Dkt. No. 7. She brought this premises liability and negligence lawsuit based on the injuries she

sustained. Id. Plaintiff's husband, Gene Anglin, also brought a claim for loss of consortium arising from Plaintiff's injuries.[1] Id.

Before her fall, Plaintiff frequently shopped at this Winn Dixie store. Dkt. No. 37-5 at 27:13-19. She usually visited the store twice a month. Id. Plaintiff's injury occurred during one of her typical grocery trips to the store. Dkt. No. 7 ¶ 5. During this visit on June 24, 2020, Plaintiff bought her groceries, unloaded the groceries in her car, and walked back to the store to return her shopping cart. Dkt. No. 37-5 at 26. After handing off her cart to a store employee, Plaintiff turned to leave through the automatic sliding doors in the store's entryway. Dkt. No. 37-6. As she walked through the open entryway, the Doors began to close shut. Id. The Doors then struck Plaintiff on her right hip and lower back, causing her to fall to the ground. Id. This fall caused Plaintiff to break her left ankle. Dkt. No. 37-5 at 25:7-9. Plaintiff subsequently underwent multiple ankle surgeries and spent months in recovery at a hospital and rehabilitation facility. Id. at 36–38. Because of her fall, Plaintiff has significant long-term mobility problems and suffers from ongoing leg pain. Id. at 41–45.

---

[1] Because the majority of the claims brought in this case arise from Plaintiff Jean Anglin's fall, the Court refers to her throughout this Order as "Plaintiff."

2

Plaintiff and her husband first filed suit against BI LO, LLC, Assa Abloy Entrance Systems US Inc., and Stanley Access Technologies, LLC for various tort claims stemming from Plaintiff's fall. See generally Anglin v. BI LO, LLC, 640 F. Supp. 3d 1393 (S.D. Ga. 2022). In that first case, the Court granted summary judgment in favor of the defendants on Plaintiff's premises liability, negligence, and failure-to-warn claims. Id. The Court also granted summary judgment in favor of the defendants on Plaintiff Gene Anglin's loss of consortium claim. Id. Plaintiffs appealed the Court's summary judgment Order, and the Eleventh Circuit affirmed the Court's decision. See generally Anglin v. BI LO, LLC, No. 22-13912, 2023 WL 6232511 (11th Cir. Sept. 26, 2023).

In the present case involving the same fall, the Anglins sued Defendants Winn Dixie and CFM. Dkt. No. 7. Although the second suit showed some improvements over the first—mainly getting the name of the grocery store right this time—the second bite at the apple suffers from the same fatal flaws as the first. As explained below, Plaintiffs have once more come forward with no evidence that the store knew of a hazard or that repairs were negligently made. Plaintiff claims Winn Dixie was negligent because it failed to keep its premises safe and failed to properly maintain the Doors. Id. ¶ 13; id. at 2 (negligence claim against Winn Dixie, Count I). Plaintiff also claims CFM was negligent in maintaining or repairing the Doors, and CFM failed to place warnings on the

3

Doors "to adequately inform persons near the door[s] that the doors might close while a person was within the threshold of the doors." Id. ¶ 20; id. at 5 (negligence claim against CFM, Count II). Finally, Plaintiff Gene Anglin claims loss of consortium based on Plaintiff's injuries.[2] Id. ¶ 15.

## LEGAL AUTHORITY

The Court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material

---

[2] Plaintiffs' amended complaint is not a model of clarity, as they appear to assert multiple claims under single counts. Giving Plaintiffs every benefit of the doubt, the Court discerns Plaintiffs intend to state a premises liability claim and failure-to-warn claim against Defendant Winn Dixie; a negligence claim and possibly a failure-to-warn claim against Defendant CFM; and a loss-of-consortium claim against both Defendants.

4

facts "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. Id. at 252. Additionally, the party opposing summary judgment "may not rest upon the mere allegations or denials in [his] pleadings. Rather, [his] responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990).

The Court views the record evidence "in the light most favorable to the [nonmovant]," Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and will draw all justifiable inferences in the nonmovant's favor, Anderson, 477 U.S. at 255.

## DISCUSSION

I. **Plaintiff's Premises Liability & Failure-to-Warn Claims Against Defendant Winn Dixie**

    **A. Georgia Premises Liability Law**

To recover against Winn Dixie on her premises liability claim, Plaintiff must prove four elements: a duty, a breach of that duty, causation, and damages. Johnson v. Am. Nat'l Red Cross, 578 S.E.2d 106, 108 (Ga. 2003). A plaintiff's status as an invitee, trespasser, or licensee determines the duty owed by the defendant.

5

Howard v. Gram Corp., 602 S.E.2d 241, 243 (Ga. Ct. App. 2004). An invitee is "someone who, by express or implied invitation, has been induced or led to come upon [the defendant's] premises for any lawful purpose." Matlack v. Cobb Elec. Membership Corp., 658 S.E.2d 137, 139 (Ga. Ct. App. 2008) (citing O.C.G.A. § 51-3-1). A person may be considered an invitee if "his presence on the property is of mutual benefit to both him and the landowner." Id. A trespasser, on the other hand, "is one who, though peacefully or by mistake, wrongfully enters upon property owned or occupied by another." Barber v. Steele, 211 S.E.2d 133, 134 (Ga. Ct. App. 1974) (citations omitted). Licensee status falls in between invitee and trespasser status. Matlack, 658 S.E.2d at 139. A licensee "is one who is permitted, either expressly or impliedly, to go on the premises of another, but merely for his own interest, convenience, or gratification." Id. (citing O.C.G.A. § 51-3-2). There is no dispute in this case that Plaintiff was an invitee.

The duty owed to an invitee is greater than the duty owed to a trespasser or a licensee. Jarrell v. JDC & Assocs., LLC, 675 S.E.2d 278, 280-81 (Ga. Ct. App. 2009). To an invitee, a defendant owner or occupier owes a duty of ordinary care to protect the invitee from unreasonable risks of harm of which the owner or occupier has superior knowledge. Robinson v. Kroger Co., 493 S.E.2d 403, 408 (Ga. 1997); see also O.C.G.A § 51-3-1 (one who owns or occupies land and "by express or implied invitation, induces or

6

leads others to come upon his premises for any lawful purpose . . . is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe"). This duty owed to invitees is nondelegable. Carpenter v. Sun Valley Props., LLC, 645 S.E.2d 35, 37 (Ga. Ct. App. 2007) ("[A] nondelegable duty exists under O.C.G.A. § 51-3-1, which requires a property owner to exercise ordinary care in keeping its premises and approaches safe for invitees.").

"As a general rule, owners or occupiers of land are not insurers of the safety of invitees." Orff v. Stonewood Rest. Grp., LLC, 646 S.E.2d 702, 704 (Ga. Ct. App. 2007). The mere fact that a plaintiff was injured, without more, does not give rise to liability on the part of the owner/occupier. Id.

To recover on a premises liability claim, an invitee plaintiff must show "(1) that the defendant had actual or constructive[3] knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the

---

[3] "An owner/occupier is on constructive notice of what a reasonable inspection would reveal." Jackson v. Waffle House, 537 S.E.2d 188, 191 (Ga. Ct. App. 2000). An owner or occupier, however, "is not chargeable with negligence in failing to discover and remedy a danger in the property which he could not have discovered by the exercise of ordinary care, or which has not existed for a sufficient time to charge him with the duty of discovering it." Johnson St. Props., LLC v. Clure, 805 S.E.2d 60, 65 (Ga. 2017) (quoting Ferguson v. Premier Homes, Inc., 695 S.E.2d 56, 59 (Ga. Ct. App. 2010) (internal quotation marks omitted)).

7

owner/occupier." Robinson, 493 S.E.2d at 414. Accordingly, "the fundamental basis for an owner or occupier's liability [is] that party's superior knowledge of the hazard encountered by the plaintiff." Id. at 405. A plaintiff cannot recover if "the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant." Norman v. Jones Lang LaSalle Ams., Inc., 627 S.E.2d 382, 386 (Ga. Ct. App. 2006); see also Forest Cove Apartments, LLC v. Wilson, 776 S.E.2d 664 (Ga. Ct. App. 2015) (denying recovery where the evidence demonstrated that the plaintiff had equal knowledge of the dangerous condition).

In premises liability actions, "summary judgment is appropriate only in plain, palpable, and undisputed cases." McCoy v. Winn Dixie Stores, 519 S.E.2d 689, 691 (Ga. Ct. App. 1999). Generally,

> to survive a motion for summary judgment, a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the

8

defendant's own actions or conditions under the defendant's control.

Am. Multi-Cinema, Inc. v. Brown, 679 S.E.2d 25, 28 (Ga. Ct. App. 2009). Issues such as how closely a particular defendant should monitor its premises and approaches, what the defendant should know about the property's condition at any given time, how vigilant invitees must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that must be decided by a jury. Id. "Where reasonable minds can differ as to the conclusion to be reached with regard to questions of whether an owner/occupier breached the duty of care to invitees and whether an invitee exercised reasonable care for personal safety, summary adjudication is not appropriate." Robinson, 493 S.E.2d at 408.

### B. Plaintiff Fails to Establish Winn Dixie's Knowledge of a Hazard

For Plaintiff's premises liability claim to survive summary judgment, she must show that Winn Dixie had actual or constructive knowledge that the Doors could close on someone. Robinson, 493 S.E.2d at 414. After considering all the record evidence and viewing it in the light most favorable to Plaintiff, the Court finds Plaintiff cannot establish that Winn Dixie had superior knowledge that the Doors were hazardous.

In short, Plaintiff has not submitted evidence that the Doors were hazardous. No evidence shows that the Doors had previously injured a patron at the store. See Dkt. No. 37-2 at 6-7, 16:13-24 (store manager Wesley Dunlap testifying that, since joining the store in 2008 to the time of his deposition, he knew nothing about the Doors closing on or injuring a person); Dkt. No. 37-4 at 37:22-25 (store manager Dillon Worley, who was on duty at the time of Plaintiff's fall, testifying that he was unaware of any customer complaints about the Doors); Dkt. No. 37-1 at 234-38 (maintenance logs for the Doors since 2016 showing no incidents where the Doors injured a customer). Nor is there any evidence Winn Dixie knew the Doors could close on an individual. See id. at 234-38 (showing no incidents where the Doors had closed prematurely or on an individual); Dkt. No. 37-2 at 16:25-17:1-4 (store manager Dunlap explaining that he was unaware that the Doors might close on someone); Dkt. No. 37-4 at 21:5-20 (store manager Worley testifying that he did not know the Doors could close on a person). Instead, the evidence establishes that the Doors were operating normally at the time of Plaintiff's fall. See Dkt. No. 37-1 at 234-38 (showing that the most recent time the Doors needed maintenance was January 3, 2020—over five months before Plaintiff's fall); Dkt. No. 37-3 at 28-30 (store employee Nasha Jones, who performed the daily safety inspection on the Doors, testifying that she did not observe any problems with the Doors). One of the store's managers even

10

tried to recreate the accident by walking through the door like Plaintiff, but the door operated normally. Dkt. No. 37-4 at 25:4–16.

Plaintiff contends the very fact the Doors closed on her is evidence of a hazardous condition. Dkt. No. 42 at 10–11. In support of this, Plaintiff points to the testimony of Juan Gonzalez, id., a service manager for Assa Abloy, the company that produced the automatic sliding doors' sensors. Dkt. No. 42-3 at 3–4. During his deposition, Mr. Gonzalez testified: "If the door started closing[,] I would say something malfunctioned." Id. at 14. He also stated: "The door should not close if somebody was standing in the threshold." Id. at 23. Mr. Gonzalez acknowledged that he did not inspect the store's Doors and could not identify any specific malfunction. Id. At bottom, Mr. Gonzalez speculated that the Doors must have malfunctioned because they closed on Plaintiff.[4] While this evidence establishes that a one-time accident occurred, it does not establish Winn Dixie's knowledge of a defect. "The solitary fact that automatic doors closed unexpectedly on Plaintiff on one occasion, for no reason that has been ascertained, does not constitute any evidence from which it

---

[4] Plaintiff has not tendered or presented Juan Gonzalez as an expert witness. Thus, Mr. Gonzalez's testimony must be read within the parameters of Federal Rule of Evidence 701 and may not be considered as evidence based on technical or specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701, 702.

11

can be inferred Defendant knew or should have known that the doors might close unexpectedly." Bryant v. Burlington Coat Factory Warehouse Corp., No. 1:19-CV-1662, 2021 WL 260236, at *3 (N.D. Ga. Jan. 26, 2021) (quoting Johnston v. Grand Union Co., 375 S.E.2d 249, 250 (Ga. Ct. App. 1988) (alterations adopted and internal quotation marks omitted)). "Plaintiff's assertion that the automatic door must have malfunctioned because it hit [her] 'falls short of providing evidence of a defect in the door' and does 'not create any issue of fact which would preclude summary judgment.'" Id. (quoting Hayes v. SNS P'ship, LP, 756 S.E.2d 273, 275 (Ga. Ct. App. 2014) (alterations adopted)).

Aside from Plaintiff's fall, there is no evidence of any known defect in the Doors or risk of injury from the Doors closing on a customer. The plain, palpable, and undisputed evidence instead shows that the Doors' closing on Plaintiff was an unfortunate accident that was unforeseeable to Winn Dixie. Plaintiff's evidence cannot establish either that the Doors were a hazardous condition or that Winn Dixie had superior knowledge of the hazard.

To the extent Plaintiff relies on the doctrine of *res ipsa loquitur* to fill the evidentiary gaps in her opposition brief, that reliance is misplaced. Under Georgia law, *res ipsa loquitur* "is an evidentiary based rule which provides for an inference of negligence to arise from the occurrence of an injury-causing incident." Matthews v. Yoplait USA, Inc., 835 S.E.2d 393, 396 (Ga.

Ct. App. 2019). *Res ipsa loquitur* may apply when "(1) the injury is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to voluntary action or contribution on the part of the plaintiff." Aderhold v. Lowe's Home Ctrs., Inc., 643 S.E.2d 811, 812-13 (Ga. Ct. App. 2007) (quoting Kmart Corp v. Larsen, 522 S.E.2d 763, 765 (Ga. Ct. App. 1999)).

Plaintiff cannot satisfy the first element. Georgia's *res ipsa loquitor* doctrine recognizes that "mechanical devices . . . get out of working order, and sometimes become dangerous and cause injury without negligence on the part of anyone." Ellis v. Sears Robuck & Co., 388 S.E.2d 920, 921 (Ga. Ct. App. 1989) (internal quotation marks omitted) (citations omitted). "Any other ruling [allowing *res ipsa loquitor* claims in these situations] would make the occupier of premises an insurer." Id. In other words, the store's automatic sliding Doors could malfunction or cause an injury absent Winn Dixie's negligence. See, e.g., id. (finding that the doctrine of *res ipsa loquitor* did not apply when a mechanical escalator malfunctioned and injured a customer because such a malfunction could occur without negligence); Ballard v. S. Reg'l Med. Ctr., 453 S.E.2d 123, 125-26 (Ga. Ct. App. 1995) (finding that a wall mounted handrail could malfunction and cause someone to fall absent negligence); Ackerman v. Walmart

13

Stores, Inc., No. 22-11180, 2021 WL 83328, at *6 (E.D. Mich. Jan. 8, 2024) ("The fact that the door allegedly closed on [the plaintiff] and made her lose her balance is not the kind of event that 'ordinarily does not occur in the absence of negligence.'" (citation omitted)). As a result, the doctrine of *res ipsa loquitor* is inapplicable here.

"It is not sufficient to simply show that an unfortunate event occurred and the plaintiff was injured." Henson v. Ga.-Pac. Corp., 658 S.E.2d 391, 395 (Ga. Ct. App. 2008) (citation omitted). Plaintiff undoubtedly suffered injuries as a result of her fall. Yet, there is no evidence from which a rational trier of fact could conclude that Defendant Winn Dixie had superior knowledge that the Doors presented a dangerous condition.[5] Additionally, due to the

---

[5] In similar cases, other courts applying Georgia law have reached the same conclusion. In Siegel v. Park Avenue Condominium Ass'n, for example, the plaintiff argued that an automatic revolving door malfunctioned because it hit and injured her. 744 S.E.2d 876, 877–79 (Ga. Ct. App. 2013). There, the court found: "The [defendant] thus submitted evidence that the automatic door was operating as it was supposed to, and [the plaintiff] presented no evidence to the contrary, such as expert testimony that the speed or force of the automatic doors was excessive or the sensor that triggered the movement was too sensitive or sited improperly. Absent evidence of a defect in addition to a fall, 'the record would not support a finding that the [defendant] had superior knowledge that the revolving doors were a hazard to [the plaintiff].'" Id. at 878–79 (quoting Owens v. Dekalb Med. Ctr., 557 S.E.2d 404, 407 (Ga. Ct. App. 2001) (alteration adopted)). In Bryant, where an automatic sliding door hit a plaintiff in the arm, the court found that the defendant lacked superior knowledge of a hazard where evidence showed the defendant inspected the door daily and the door had never injured a customer. 2021 WL 260236, at *3. This case is similar factually and evidentiarily. The evidence shows that Winn

mechanical nature of the Doors, Plaintiff cannot rely on the doctrine of *res ipsa loquitor* to show Winn Dixie was negligent. Defendant Winn Dixie's motion for summary judgment as to Plaintiff's premises liability claim is, therefore, **GRANTED.**

### C. Plaintiff's Failure-to-Warn Claim

Defendant Winn Dixie is also entitled to summary judgment on Plaintiff's failure-to-warn claim. Plaintiff's failure-to-warn claim is subsumed within her premises liability claim. Tomsic v. Marriot Int'l, Inc., 739 S.E.2d 521, 532 (Ga. Ct. App. 2013). As a result, her failure-to-warn claim must be analyzed within the framework of premises liability. Id.; see also Lau's Corp. v. Haskin's, 405 S.E.2d 474, 476–78 (Ga. 1991) (analyzing a failure-to-warn claim within framework of premises liability); Benson-Jones v. Sysco Food Servs. of Atlanta, LLC, 651 S.E.2d 839,

---

Dixie inspected the Doors daily, the Doors had never injured a customer, and the Doors were operating normally before and after Plaintiff's fall. Plaintiff has not countered this evidence with evidence of a specific malfunction or evidence that would place Winn Dixie on notice of a defect. The evidence in this case is unlike that in Traver v. Felton Manor, LLC, where the court did find a genuine factual dispute over the defendant's superior knowledge of a hazard. 877 S.E.2d 688, 692 (Ga. Ct. App. 2022). In Traver, a set of automatic doors at an elderly care home closed on a resident and caused him to fall. Id. at 691. Unlike Winn Dixie here, the defendant in Traver knew the automatic doors would close on its residents and that the doors exerted significant force when they closed, thereby posing a hazard to the individuals using the doors. Id. at 691–93. While the evidence showed the defendant in Traver was on notice of a hazard and risk of injury, the evidence in this case does not show Defendant Winn Dixie was on notice that the Doors could close on or injure an individual.

15

844-45 (Ga. Ct. App. 2007) ("As a general rule, an owner or occupier of land is liable to invitees for injuries they sustain as a result of his failure to warn them of dangers which he was aware of, or in the exercise of reasonable care should have known." (internal quotation marks omitted) (citation omitted)). Plaintiff's failure-to-warn claim fails for the same reason her premises liability claim fails: the evidence cannot establish that Defendant Winn Dixie knew of any danger or hazard posed by the Doors. Without such notice, Winn Dixie was not obligated to warn of a danger it did not know existed. Accordingly, Winn Dixie's motion for summary judgment as to Plaintiff's failure-to-warn claim is **GRANTED**.

## II. Plaintiff's Negligence Claim Against Defendant CFM

### A. Georgia Negligence Law

To prevail on a negligence claim against a contract servicer like CFM, Plaintiff must first establish that Defendant CFM owed her a duty. See Dupree v. Keller Indus., Inc., 404 S.E.2d 291, 294 (Ga. Ct. App. 1991) ("If a defendant owes no legal duty to the plaintiff, there is no cause of action in negligence."). "Whether a duty exists upon which liability can be based is a question of law." Strozier v. Herc Rentals, Inc., No. 1:19-CV-01083, 2022 WL 975602, at *3 (N.D. Ga. Mar. 31, 2022) (citing City of Rome v. Jordan, 426 S.E.2d 861, 862 (Ga. 1993)). Moreover, "[n]o matter how innocent the plaintiff may be, he is not entitled to recover

16

unless the defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed the plaintiff." City of Douglasville v. Queen, 514 S.E.2d 195, 197-98 (Ga. 1999).

Additionally, "to recover for any injuries resulting from the breach of a duty, there must be evidence that the injuries were proximately caused by the breach of the duty." McEntyre v. Sam's E., Inc., 870 S.E.2d 385, 389-90 (Ga. 2022) (quoting Goldstein, Garber & Salama, LLC v. J.B., 797 S.E.2d 87, 89 (Ga. 2017)). "And the injuries must be the 'probable or natural consequence' of that breach and must 'reasonably have been anticipated, apprehended, or foreseen.'" Id. at 390 (quoting Goldstein, 797 S.E.2d at 89); see also Tyner v. Matta-Troncoso, 826 S.E.2d 100, 104 (Ga. 2019) ("Inextricably entwined with concepts of negligence and proximate cause is a notion of foreseeability, the idea that a defendant could reasonably foresee that an injury would result from his act or omission." (citations omitted)). Finally, the question of proximate cause "may be decided as a matter of law when the jury could conclude only that the defendant's acts were not the proximate cause of the injury." Walker v. Giles, 624 S.E.2d. 191, 200 (Ga. Ct. App. 2015).

17

### B. Plaintiff Fails to Establish CFM's Negligence

Defendant CFM argues that Plaintiff has failed to establish the existence of a duty or any negligent acts performed by CFM. Dkt. No. 37. The Court will address these arguments in turn.

First, CFM argues that "Plaintiffs' claims against CFM fail because they cannot establish that CFM owed them any duty with respect to Ms. Anglin's fall." Id. at 8. Indeed, Plaintiff's complaint and briefing do not explain how CFM owed her any duty, and Plaintiff has not submitted evidence establishing the existence of a duty. Dkt. Nos. 7, 42. As explained in CFM's contract with Winn Dixie, CFM was not the owner or occupier of the store and did not assume custody and control over any portion of the store. Dkt. No. 37-1.[6] Without evidence establishing a duty, CFM is entitled to summary judgment.

Second, even if CFM did owe Plaintiff a duty, CFM argues that Plaintiff cannot establish that it negligently maintained or repaired the store's Doors. Dkt. No. 37 at 11. Plaintiff has identified no act or omission by CFM in connection with the maintenance or repair of the Doors. Nor is there any evidence

---

[6] "A contractor can obtain the status of an occupier if it takes control of the premises." Stelly v. WSE Prop. Mgmt., LLC, 829 S.E.2d 871, 874 (Ga. Ct. App. 2019) (citations omitted). Further, "custody and control[] may be defined as having personal charge of or exercising the rights of management or control over the property in question." Id. at 875 (internal quotation marks omitted) (citation omitted). No record evidence suggests CFM was a occupier or in custody and control.

18

suggesting CFM negligently maintained or repaired the Doors. In opposing CFM's argument, Plaintiff points to work orders and purchase orders for new door components and appears to argue that this indicates negligent maintenance. Dkt. Nos. 43-2, 43 at 11. These records, however, are dated months after Plaintiff's fall. Dkt. No. 43-2. They do not indicate that CFM improperly maintained or repaired the store's Doors before Plaintiff's fall. The maintenance records preceding Plaintiff's fall show no open maintenance requests or unresolved problems with the Doors. Dkt. No. 27-1 at 234-38. This is consistent with the testimony of the store's employees, who were unaware of any problems with the Doors. Dkt. Nos. 37-3 at 28-30, 37-4 at 37.

Plaintiff also turns to the doctrine of *res ipsa loquitor* in her claims against CFM. And again, the doctrine is inapplicable here. There is no evidence that Defendant CFM had exclusive control over the Doors or the store. Without evidence that Plaintiff's injury was caused by an "instrumentality within the *exclusive* control" of CFM, *res ipsa loquitor* fails. Aderhold, 643 S.E.2d at 812-13 (emphasis added).

Finally, Plaintiff fails to establish causation. Apart from not identifying a specific breach of a duty by CFM, Plaintiff has not shown how her injuries are the probable or natural consequence of CFM's breach or how CFM reasonably could have anticipated, apprehended, or foreseen Plaintiff's injuries. See McEntyre, 870

19

S.E.2d at 390. Absent evidence of a breach or causation, Plaintiff's claims against CFM fail. Defendant CFM's motion for summary judgment is, therefore, **GRANTED**.[7]

### III. Plaintiff Gene Anglin's Loss of Consortium Claim

Summary judgment for Defendants is also appropriate for Plaintiff Gene Anglin's loss of consortium claim because Mr. Anglin passed away after filing this action. On July 14, 2023, Defendant Winn Dixie filed a suggestion of death pursuant to Federal Rule of Civil Procedure 25(a)(1). Dkt. No. 30. Plaintiff filed no motion for substitution within ninety days after the service of the suggestion of death. Thus, the action by Mr. Anglin "must be dismissed." Fed. R. Civ. P. 25(a)(1).

### CONCLUSION

For these reasons, Defendants' motions for summary judgment, dkt. nos. 37, 39, are **GRANTED** in their entirety. The Clerk is **DIRECTED** to terminate all pending motions and close this case.

**SO ORDERED** this 16th day of February, 2024.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[7] To the extent Plaintiff states a failure-to-warn claim against Defendant CFM, summary judgment for CFM is appropriate. Plaintiff fails to present any evidence suggesting that CFM was aware of some danger posed by the store's Doors. Plaintiff also fails to present any evidence that the existing warnings on the Doors were inadequate.